ALBERT MANCUSO

 VS No. 7784.

JOSEPH CHALONA CO.
 Appellant.

December 22d, 1919.

CHARLES F. CLAIBORNE, JUDGE.

Plaintiff sued the defendant for $2563 damages. There was judgment in his favor for $500. The defendant appealed to the Supreme Court. The plaintiff then answered the appeal praying that the judgment be amended by increasing it to one thousand dollars. The Supreme Court considered this petition to be an admission that the real amount in controversy was only $1000, of which the Court had no jurisdiction, and that the balance of the claim was fictitious. In accordance with their ruling in Reine vs RRd., 144 La., 750, they transferred the case to this Court. The plaintiff thereupon moved this Court to dismiss the appeal on the ground that it appeared by the record that the amount claimed exceeded $2000.00. Since that motion was made the opinion and decree of the Supreme Court mentioned above have been filed in this Court. There remains nothing for us to do but to obey the mandate of the Supreme Court and to assume jurisdiction of the case.

Motion to dismiss denied.

April 19th, 1920.

CHARLES F. CLAIBORNE, JUDGE.

This is a damage suit for injury suffered by the plaintiff by stepping upon a nail while walking along the sidewalk in front on defendant's property.

The plaintiff alleged that on December 21st at about 5:30 P. M. he was walking along South Front Street on his way to work; that while passing in front of the place of business of the defendant at 423-427 South Front Street he stepped upon a nail which was in a piece of box negligently swept upon said sidewalk by an employee of defendant in the regular discharge of his duties; that said nail penetrated deep into petitioner's foot; that he was compelled to seek the services of a physician, and took an injection of serum; that he suffered great pain, and remained in his room for two weeks; he claimed $35 for physician's fees; $28 for loss of wages; $1500 for mental and physical suffering and $1000 for future suffering, making in all $2563.00.

The defendant denied each and every allegation of the petition.

There was judgment for the plaintiff for $500, and the defendant has appealed.

The judge of the District Court gave written reasons as follows:

" The plaintiff was walking up Front Street on his way to work in the latter part of December 1916, and, when in front of the store of the defendant stepped on an upright nail in a piece of wood concealed and invisible in a pile of debris being swept up by one Gray, an employee of the defendant. The nail from the weight of his body penetrated the sole of his shoe and his foot inflicting painful and dangerous injuries requiring the serum treatment to avoid tetanus and other treatment until he recovered, the nail

445

and piece of wood to which it was attached, the attorney to whom it is said to have been delivered being called to arms, was lost. The fact however is that the plaintiff is absolutely innocent of any contributory neglect and was within his legal rights on the sidewalk at the point where the injury, appeals strongly to the Court. Res ipsa loquitur does not apply but it appears that defendant's employee in making up his pile of sweeping on the sidewalk, as was his duty and obligation, was negligent in the extreme in not taking sufficient care to see that no dangerous or concealed instrument was contained in the work he was doing. It is true that the point was a locus publicus, but it was used as a place of transfer by defendant and for the handling of its goods. The Bonura place was too distant to furnish ordinarily such a nail and piece of wood as is indicated by the evidence. In my opinion the injury was inflicted by an upright nail concealed in a pile of sweepings on the sidewalk through the negligence of defendant's servant or perhaps in violation of instructions; but the act was one under which defendant is liable. I estimate the pain and suffering will be compensated by $500. C.C., 1934".
The defendant has appealed.

The defendant admits that if the nail was put upon the sidewalk by the defendant that he is liable. 37 A., 27: 50 A., 280; 126 La., 594. But he denies that the evidence proves that the nail was placed there by him or by his servant; and admitting thatit was, he contends that the damages allowed by the District Court are excessive.

Io Does the testimony make it reasonably certain that the nail was placed there by the defendant is the first question?

Plaintiff testifies that as he was passing defendant's place of business they were sweeping the place, sweeping some sawdust, and there was a nail in a piece of wood, and he walked upon it and the nail went through his shoe and then through his foot; at the time of the accident there were present a colored man named Gray, Mr. Gondolfo, and a Mr. Lampman, now in the army; Gray was sweeping the banquette, he was working for Mr. Chalona; the nail was a slim round wire nail with a sharp point; he worked all

that night as watchman and for three days after; then he saw the doctor, who cut his foot open because it was swollen and festering, and injected antitoxin into his side to prevent lockjaw; the defendant does a wholesale fruit, cabbage and potato business on his premises; the fruit comes in sacks, in boxes, or crates, or barrels; at the time of the accident there was a lot of sawdust and broken wood of the stuff that is left over during the day, Gray and another man were sweeping off the sidewalk to close up the business; it was dark at that time of night; he stayed away from work fourteen days; he was treated by a society doctor; he was paid $14 a week; he was not paid during his absence from work; the injection of the serum was very painful for two or three days; he had no fever but felt stiff; his doctor sent him a bill for eight visits and serum $11.50; the nail was about the center of the sidewalk; Bonura kept a place at the corner next to Chalona, and packed cabbages there; the piece of wood he stepped on was one of those pieces that goes on the edge of a California fruit box for strapping the box; one inch wide and half an inch thick and eighteen inches long; he gave the piece of wood to his attorney A. M. Frolick; but Mr. Frolick went into the army and when he came back he could not find it; the other side adjoining Bonura was a molasses factory but it was then vacant; next to Chalona towards Poydras comes Segari then Bonura at the corner; if the wood came from a cabbage box it would be pine, and this wood was a kind of cotton wood; Bonura is in the fruit and cabbage business.

Dr. Roeling testified that he injected anti-tetanic serum into the plaintiff; it causes some suffering at the seat of injection for about twenty-four hours.

T. C. Gongolfo testified that in December 1916 he was in the employ of the Consumer's Buscuit Company on Front Street; he knows the plaintiff who was then night watchman for the Company; he saw the plaintiff when he was hurt; he had just passed him in front of Chalona's store and when ten or twelve feet away from him he heard him holloa; he turned around and saw plaintiff leaning against the wall and pulling something out of his foot; it was about six o'clock and it was dark; it was about the middle of the store on the sidewalk in front of Chalona's; some one went up to plaintiff and helped him to pull the thing out of his foot; there

447

are no commission merchants in that square besides Chalona; Bonura is at the corner; there are three stores between Bonura and Chalona; two stores were occupied and one was vacant; Bonura was not using it for his goods; the people around there pile up their boxes and crates and use the sidewalk; he passed that place six or seven times a day in his business and dodged the boxes.

Paul Gray testified that in December 1916 he was employed by the defendant; he is now employed by John Bonura at the corner of Poydras and Front; that is about half a block away from Chalona; when he worked for Chalona his duty was to pack fruit and repack it and unload wagons; on December 21st, 1916 at about six o'clock he was sweeping Chalona's banquette, when he saw the plaintiff passing the store; he saw him stop and squat, and lean towards the window; he had a piece of wood with a nail in it in his foot and he was trying it get it out; he pulled it out; this happened five feet from the main entrance of Chalona's store, while he was sweeping the debris off the' sidewalk; this wood came from an apple box or a California fruit box; he does not know where it came from; he does not "think it came out of any other place except Chalona's place because there isn't any other fruit and apple and orange place near there"; Bonura sometimes uses Chalona's sidewalk to pack stuff but he did not use those cleats; he used them for cabbages; the same kind of nails are used in cabbage crates; there is a lot of debris on the sidewalk from packing things, and he always sweeps the banquet every evening; it consists of sawdust, old pieces of wood, and oranges and apples all around the banquette; every one along there sweeps the banquette off every evening.

Joseph Chalona, the defendant, testified that he was engaged in the wholesale fruit and produce business at 423 Front Street; the store is swept every day and the debris are swept inside and put in trash barrels; the sidewalks are swept every afternoon and are kept very clean, and no dirt from the inside of the store is ever swept outside; the store adjoining theirs was vacant and the banquette was being used by Bonura for packing cabbages; Bonura worked there sometimes very late and then his sidewalk was not swept off and was full of debris, witness packed cabbages in 34 inch crates and used the same nail that is used in orange and apple boxes, a round wire nail; he deals in all kinds of fruits and vegetables and cabbages, and

448

oranges and apples; but he does not pack cabbages in front of the store; he uses the rear; sometimes they repack oranges and apples but it is always done in the rear of the store on Fulton Street; the samples are displayed in front of the store and very little,if any, debris accumulate there, the wood boxes in which apples and oranges are packed are very thin, not more than 1-8th of an inch; there is very little difference in cabbage boxes, they are a little thicker.

The defendant argues with much vehemence that plaintiff has not proved his case, because he alleged that the nail which injured him had been swept out of defendant's store and that the testimony fails utterly to sustain that allegation. It is immaterial whether the nail was swept out of defendants store; the crucial question is whether it got on the sidewalk by defendant's fault. The burden of the testimony was turned in that direction and we must pass upon it as we find it.

The defendant also objected strenuously to the introduction of ordinance 3081 C. C. S. of the/casting of any object upon the banquette. We have not considered that ordinance as an element of our conclusions, inasmuch as the act was illegal prior and subsequent to, and independent of, said oridnance, as was said in the two authorities quoted by us above.

Counsel relies upon the case of Ackerly vs Sullivan, 34'A., 1156, in which it was held that the mere fact that a piece of scantling extended in front of defendant's property ever which plaintiff stumbled and was injured was not sufficient to establish the fact that the scantling was placed there by the defendant. That is very true, because there were no circumstances corroborating the presumption that the scantling had been placed there by the defendant, and the testimony tended to refute that presumption. But we think the testimony in the present case presents an entirely different state of facts. The evidence is that the defendant was engaged in the fruit and vegetable business, contained in the wooden boxes or crates; held together by nails; that these boxes were handled on the banquette in front of defendant's store; that from such handling there were sawdust and debris, pieces of wood and nails that came from those boxes and fell upon the banquette, and were swept up and gathered and removed every even-

449

ing; whether these debris resulted from packing or unpacking, or exhitition, is immaterial; the fact remains that there were debris, and that those debris fell upon the banquette through defendant's action; that the plaintiff in walking upon the banquette in front of defendant's store, picked up a nail and was wounded. What other reasonable conclusion can the mind come to, than to presume that the nail was dropped upon that banquette by defendant in the course of his business? The defendant resists this conclusion because the nail could have come upon the banquette in other ways. But he does not make that probable. He does not destroy the reasonable conclusion and presumption that it came from defendant's store. He says it might have come from Bonura. That is true, but it is only a remote possibility as Bonura was far removed, while it is more probable that it came from defendant. In the case of Simmonds vs Southern Rifle Club, 52 A., 1114, the Court said:

"Where the evidence excludes every other reasonable hypothesis than that the ball which struck the person injured was fired from the club grounds, by members or guests engaged in target practice, such person is entitled to recover from the Club". *Also 144 La 640 –*

The defendant must show that every reasonable hypothesis that the nail was put there by defendant's fault is excluded by the evidence. 105 La., 202.

The testimony and every reasonable hypothesis leads to the conclusion that the nail was dropped upon the banquette by the defendant. The District Judge was of that opinion and we cannot say that he erred.

But we are inclined to believe that the sum allowed is in excess of the damages suffered. The plaintiff lost $28 in wages and will have to pay $11 to his doctor. The rest is for his sufferings. His doctor says that plaintiff did not suffer more than ordinarily, and that the serum caused pain during twenty-four hours only. This is a case for compensatory damages alone; no vindictive damages are allowed in any case, 140 La.,1038;144 La.,167,especially in a case where a principal is made liable for the fault of his employee. 49 A.,1170;47 A.,1656;11 A.,294;147 U.S.,101; 56 N.Y.,44.

It is therefore ordered that the judgment herein be amended by reducing the amount allowed from Five Hundred Dollars to Two Hundred and fifty Dollars, and that as thus amended it be affirmed, the plaintiff and appellee to pay the costs of appeal.

Judgment reduced to $250.00

---------------------

ON REHEARING.

OPINION.

St. Paul, Judge.

A re-examination of this case satisfies us that we were
not in error in our conclusion heretofore reached as to defendant's
liability.

It is quite immaterial whether the cleat and nail on
which plaintiff stepped was or was not swept out of defendants
store, for it is sufficient that it came upon the sidewalk
by the negligence of one of defendant's employees.

Now, as no one saw the piece of wood when it fell there,
the only question is whether the evidence is sufficient
to conclude that it could have gotten there only through
some such negligence.

As to this the evidence is abundant that the cleat came
from a "california fruit box", and that Bonura was at that
time handling only cabbages; that defendant used the sidewalk
for the display of samples of California fruit; that Gray was
employed to "pack fruit and repack it, and unload wagons";
that there is always "a lot of debris on that sidewalk
from packing things"; that Gray swept off this debris every
evening; that this debris consists of "saw dust and old
pieces of wood, oranges and apples"; that this debris
"remains there all day long"; and that the cleat with the
nail in it was in a pile of debris which Gray was sweeping
up after his days work.

Of course this is not as conclusive as a mathematical demonstration; but it is sufficient to satisfy us, as it did the district judge, that this cleat with a nail in it, on which plaintiff stepped was one of the old pieces of wood which fell to the sidewalk whilst Gray was packing and unpacking fruit and loading it on wagons; for it excludes any other reasonable hypothesis on which to account for its presence there. Simonds vs Southern Rifle Club, 52 An 1114; also 144 La 640.

As to the quantum of damages, we think we allowed too little by our former judgment and that the amount allowed by the district judge is proper. *126 La 594; 120 La 831*

Our former decree is therefore set aside and it is now ordered that the judgment appealed from be affirmed.